IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| HOWARD TRAVIS, | ) | |
| Plaintiff, | ) ) ) | Case No. 09 C 3469 |
| v. | ) ) | Judge Virginia M. Kendall |
| EILEEN KEIPER-KNAPP, TODD CZARNECKI and the CITY OF CHICAGO, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Howard Travis sued two paramedics, Eileen Keiper-Knapp and Todd Czarnecki, as well as their employer, the City of Chicago (together "the Defendants"), for violating his constitutional rights during an incident where the paramedics restrained and beat him while taking him to a hospital. The Defendants now move for summary judgment on Travis's 42 U.S.C. § 1983 claims for excessive force and conspiracy, asserting that both claims fail because the paramedics were not acting under color of state law and the conspiracy claim also fails because Travis has no evidence of an agreement between the paramedics to violate his rights. For the foregoing reasons, the Court denies Defendants' motion.

**I.    MATERIAL UNDISPUTED FACTS**

Almost all the facts of this case are undisputed. Travis was injured in a car accident in October 2007 and had surgery on his neck on June 6, 2008. (Pl. 56.1 Resp. ¶ 5.) On June 8, 2008, he was released from the hospital with a neck collar and was taking vicodin to treat his pain. (*Id.* at ¶¶ 6-7.) That night, he went to a grocery store on the south side of Chicago; once he got there, Travis began to sweat and sat down on a store display. (*Id.* at ¶¶ 8-9.) The store's manager saw

Travis leaning over, sweating profusely, wearing a hospital band and starting to faint. (*Id.* at ¶¶ 10-11.) The manager, concerned about Travis, called 911 twice. (*Id.* at ¶¶ 13, 14.) Eventually, Keiper-Knapp and Czarnecki were dispatched to the grocery store, where Travis told them that he was just tired, that there was nothing wrong with him, and that he did not need their help. (*Id.* at ¶¶ 15-17; Def. 56.1 Resp. ¶ 5.) At that point, the paramedics picked him up by his arms and legs and threw him into a chair. (Pl. 56.1 Resp. ¶ 18.)[1] When paramedics took him to the ambulance, he tried to stop them by putting his hands on each side of the ambulance's doors; the paramedics pushed him in anyway and reclined the chair Travis was in, which was painful to him. (Pl. 56.1 Resp. ¶¶ 20-21; Def. 56.1 ¶¶ 7-8.) He screamed at the paramedics to let him out, and began to spit due to irritation from a metal plate in his throat. (Pl. 56.1 Resp. ¶¶ 22, 24.)

At that point, Keiper-Knapp attempted to put a surgical mask on Travis to keep him from spitting on her, but Travis pushed it away. (Pl. 56.1 Resp. ¶ 25; Def. 56.1 ¶ 9.) Then someone choked Travis, put him in a headlock, and rammed his head into the wall of the ambulance twenty times, cutting his head. (Pl. 56.1 Resp. ¶¶ 29-30; Def. 56.1 ¶ 10.) The parties dispute what happened next: the Defendants assert that Travis started punching Keiper-Knapp; Travis says he never touched her and has no idea how she sustained any injury. (Pl. 56.1 Resp. ¶ 26.)[2] Keiper-Knapp told Czarnecki to stop the ambulance, and Czarnecki stopped it near a fire station. (Pl. 56.1 Resp. ¶¶ 27-28; Def. 56.1 Resp. ¶ 13.) Keiper-Knapp radioed the fire house for help, and a number

---

[1] Travis testified that it "looked like" two male paramedics who put him in the chair, and that "they me later that it was a man and a woman." (Travis Dep., Doc. 66-1, at 81.) The Defendants, however, concede that Keiper-Knapp and Czarnecki were the only two paramedics dispatched to the grocery store that night, and they do not contend that Travis sued the wrong paramedics. (*See* Def. 56.1 Resp. ¶ 1; *see also* Docs. 64, 65 and 74.)

[2] It is undisputed that Keiper-Knapp had a CT scan because the doctor at the hospital thought her jaw was broken, and that she was th only paramedic in the back of the ambulance during Travis's transport. (Pl. 56.1 Resp. ¶ 39; Def. 56.1 Resp. ¶ 12.)

2

of firefighters came up to the ambulance after it stopped near the fire station and opened the ambulance's door. (Pl. 56.1 Resp. ¶¶ 30-31.) When Travis tried to get out of the ambulance, a male paramedic twisted his arm and told him "I'll break this mother fucker if you don't stop." (Def. 56.1 Resp. ¶ 15.) One of the firefighters made a racial insult, and then the firefighters and one of the paramedics grabbed Travis and taped him to a stretcher, using so much tape he "looked like a mummy." (Pl. 56.1 Resp. ¶¶ 31, 33, 35; Def. 56.1 Resp. ¶ 16.) Then one of the paramedics began to beat Travis's face and punched him in the stomach. (Pl. 56.1 Resp. ¶¶ 34, 36; Def. 56.1 Resp. ¶ 17.)

When the ambulance got to the hospital, one of the firefighters handcuffed Travis to the bed. (Pl. 56.1 Resp. ¶ 37.) A member of the hospital's staff took blood against his will. (*Id.* at ¶ 38; Def. 56.1 Resp. ¶ 21.) Travis told the doctor at the hospital that he had no medical complaints, and that he wanted to go home (the parties dispute whether he sustained any injuries). (Pl. 56.1 Resp. ¶ 40.) Travis also told a doctor at the hospital that he had been mistreated by the paramedics and did not want to be treated at that particular hospital because he had heard bad reviews of it from a neighbor. (Def. 56.1 Resp. ¶ 20.) The next day, police officers arrested him and charged him with battering Keiper-Knapp. (Pl. 56.1 Resp. ¶¶ 44, 46.) He was detained at Cook County Jail for three days before being released, and was later acquitted at trial of the assault and battery charges. (Def. 56.1 Resp. ¶¶ 24, 28.) Travis asserts that he sustained severe emotional damages as a result of the incident. (Pl. 56.1 Resp. ¶¶ 47-49; Def. 56.1 Resp. ¶¶ 26-27.)

## II. STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

3

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court may "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'"). Plaintiff, as the party opposing the motion for summary judgment, "get[] the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011).

## III. DISCUSSION

### A. Excessive Force[3]

The Defendants assert that they are entitled to summary judgment on Travis's excessive force

---

[3] During summary judgment briefing, Travis abandoned his § 1983 and state "abuse of process" claims, as well as his federal false arrest claim. (*See* Doc. 70.) The Defendants did not move for summary judgment on Travis' state assault and battery and malicious prosecution claims, and withdrew their motion as to his intentional infliction of emotional distress claim. (*See* Docs. 64, 74.)

4

claim because they were not acting under color of state law during the incident. To be liable under § 1983, the paramedics must have acted "under color of state law" to deprive Travis of a federally guaranteed right. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010); *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1989). "Not every action by a state official or employee is to be deemed as occurring 'under color' of state law," *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1995); rather, action is taken under color of state law "when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001). A state officer's conduct does not constitute acting under color of state law unless it is "related in some way to the performance of the duties of the state office." *Id.* at 485.

There is very little caselaw discussing when paramedics are acting under the color of state law and when they are not. The most factually analogous case is *Cole v. City of Chicago*, No. 06 C 4704, 2008 WL 68687 (N.D. Ill. Jan. 4, 2008). In that case, the plaintiff alleged that a paramedic pulled him out of an ambulance when it reached the hospital, slammed him to the ground, and beat him. *Id.* at *1. Taking the plaintiff's assertions as true, the court refused to dismiss his complaint, finding that moving patients in and out of ambulances is "something that paramedics do in the course of their regular duties," an "allegedly imporper use of force occurred while [the paramedic] was performing his official duties, consequently, the paramedic was acting under the color of state law. *Id.* at *4.

The Defendants urge the Court to ignore Cole as not binding and wrongly decided, but the Seventh Circuit, in *Wilson*, distinguished *Cole* in a way that endorsed the holding in *Cole*. In *Wilson*, after receiving a number of complaints about cars parked in front of a repair shop, an alderman of

5

a Chicago suburb went to the shop and demanded that an employee move the cars. *Wilson*, 624 F.3d at 90. When the employee refused, the alderman beat the employee unconscious. *Id.* The Seventh Circuit first recognized that as an elected alderman, the defendant served the municipality in purely a legislative capacity. *Id.* at 392. Consequently, the question was whether the alderman's activities were "related in some way" to his legislative duties. *Id.* The court found going to the repair shop to tell the employee to move the cars and to investigate the situation were related to his legislative function, but when he used force on the employee, he crossed the line into law enforcement when he only had the authority to pass legislation to solve the parking problem. *Id.* at 393. The court then explicitly distinguished the facts in that case from those in *Cole*, emphasizing that in *Cole*, the improper use of force occurred while the paramedic performed his official duty of taking a patient out of an ambulance. *Id.*

Here, the Defendants do not dispute that the paramedics' official duties include responding to calls for assistance, putting patients on chairs or stretchers, loading them into ambulances, taking steps to stabilize their medical conditions, and transporting them to the hospital. (*See generally* Doc. 76-1, Chicago EMS Policies and Procedures.) In certain situations, the paramedics have the authority to restrain patients and to take them to the hospital against their will. (*Id.* at 17-18, 21.) Travis asserts the paramedics treated him roughly while loading him onto a chair and transporting him to the hospital. As in *Cole*, the improper force that the paramedics allegedly used against Travis was unquestionably "related" to their official duties; indeed, the force was used, in part, to control Travis so that the paramedics could complete their duties. In contrast, in *Vanderlinde v. Brochman*, 792 F. Supp. 52, 53-54 (N.D. Ill. 1992), a pair of firefighters were not acting under the color of state law when told the plaintiff they were "the law in Oak Lawn" and then beat him, and in *Hughes v.*

6

*Meyer*, 880 F.2d 967, 969 (7th Cir. 1989), a game warden was not acting under color of state law when he reported he was falsely imprisoned by the plaintiff because his authority only extended to enforcement of the state's game laws. In those cases, the state actors were acting as private citizens, and not under the color of state law.

Finally, the Defendants assert that the paramedics were not acting under color of law because they had no authority to use force against Travis. The question, however, is not whether the paramedics had the authority to use force, but rather if that force was related to the authority they had. As one court in this District put it elegantly, "actions taken under color of state law must be related to the state authority, even though the actions are not actually permitted by the authority." *Murphy v. Chicago Transit Auth.*, 638 F. Supp. 464, 468 (N.D. Ill. 1986). Under the Defendants' formulation, only police officers could be liable for excessive force under § 1983, because typically only police officers have state authority to use force. Indeed, the Defendants argue that *Cole* was an "outlier," and suggest that paramedics should be simply immune from excessive force claims. (*See* Doc. 74.) That is contrary to binding precedent, which does not cabin the color of law inquiry with reference only to the actual authority held by the state actor, and the Defendants do not point to any authority suggesting such immunity for paramedics. Other than asserting the paramedics were not acting under color of law, the Defendants do not dispute that a reasonable jury could find that the paramedics used excessive force on Travis. This claim must proceed to trial.

**B.     Conspiracy**

The Defendants also assert that they are entitled to summary judgment on Travis's conspiracy claim because he has no evidence of an agreement to violate his constitutional rights. To establish a conspiracy claim under § 1983, Travis must put forth evidence that the paramedics reached an

7

agreement to deprive him of his constitutional rights and that he actually suffered a deprivation as a result of the overt acts taken in furtherance of the agreement. *See Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir.1988). To defeat summary judgment on a § 1983 conspiracy claim, Travis must demonstrate the existence of an agreement or acts "sufficient to raise the inference of mutual understanding" between the paramedics. *Admunsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) ("a conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy.") (internal citation and quotation omitted). While a conspiracy may be inferred through circumstantial evidence, the circumstantial evidence must be "sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Green v. Benden*, 281 F.3d 661, 665-66 (7th Cir. 2002).

The Defendants first assert that Travis's conspiracy claim fails because he asserts that the conspiracy only included state actors, not a private citizen as well. In *Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003), cited by the Defendants here, the Seventh Circuit wrote: "to establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Id.* at 785 (internal quotations and citations ommitted). One court in this District recently examined in detail the issue of whether a § 1983 conspiracy claim may include only state actors or whether it must include a private citizen as well, as suggested by the language in *Williams*. *See Sanders v. Sheehan*, No. 09 C 7707, 2010 U.S. Dist. LEXIS 85834, at *8-17 (N.D. Ill. Aug. 12, 2010). The *Sanders* court noted that despite the language in question, the Seventh Circuit and the Supreme Court have never

8

held that a § 1983 conspiracy *must* include a private actor, and have only made clear that a plaintiff assert private actors participated in a § 1983 conspiracy and should be held liable under § 1983. *Id.* at *8-9 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970) and *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). In short, *Williams* and the other precedent "do not stand for the proposition that private conduct is indispensable to a § 1983 conspiracy claim, and § 1983 itself suggests no such requirement." *Sanders*, 2010 U.S. Dist. LEXIS 85834, at *12 (noting a plaintiff could use a state-actor-only conspiracy claim when "several individual state actors conspire to deprive an individual of his consitutional rights, while some, but not all, of the conspirators effectuate the deprivation").[4] Indeed, this Court has routinely denied summary judgment on § 1983 conspiracy claims involving only state actors. *See, e.g.*, *Richardson v. City of Chicago*, No. 08 C 4824, 2011 WL 862249, at *10-11 (N.D. Ill. Mar. 10, 2011); *Aponte v. City of Chicago*, No. 08 C 6893, 2010 WL 2774095, at *6-8 (N.D. Ill. Jul. 14, 2010). The Court will grant not summary judgment to the Defendants because Travis's alleged conspiracy involved only state actors.

Turning to the merits of the Travis's conspiracy claim, the Defendants assert that there is no evidence of any agreement between the paramedics. A reasonable jury, however, could find such an agreement. The paramedics acted in concert to get Travis into the chair at the grocery store, and the excessive force asserted by Travis occurred first in the back of the ambulance with one paramedic, and then continued outside when the other paramedic twisted his arm. Also, there is an inference as to mutual understanding between the paramedics to contact the firefighters to get their assistance in dealing with Travis. The Defendants are not entitled to summary judgment on Travis's

---

[4] Here, Travis does not assert that each paramedic's participation in the conspiracy is the same as their involvement in the conspiracy, so the conspiracy count is not duplicative of the excessive force count.

conspiracy claim.

## IV.     CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (Doc. 64) is denied and Travis's excessive force, conspiracy, malicious prosecution and assault and battery claims must go to trial. The parties shall appear at a status hearing on November 14, 2011 at 9 a.m. to set a trial date. In advance of that date, the parties shall meet and confer to discuss how long they believe the trial will take.

								_____
								Virginia M. Kendall
								United States District Court Judge
								Northern District of Illinois

Date: November 8, 2011